1
2
3
4
5          *E-FILED - 8/25/09*
6
7
8
9          IN THE UNITED STATES DISTRICT COURT
10          FOR THE NORTHERN DISTRICT OF CALIFORNIA
11
12   TEKLEZGI GEBREZGIABHER,              )    No. C 06-7864 RMW (PR)
                                         )
13                    Petitioner,         )    ORDER DENYING PETITION FOR
                                         )    WRIT OF HABEAS CORPUS
14        vs.                            )
                                         )
15   KREMER C. MIKE,                      )
                                         )
16                    Respondent.         )
     _____)
17
          Petitioner, a state prisoner proceeding pro se, filed a petition for a writ of habeas corpus

18   pursuant to 28 U.S.C. § 2254.  Thereafter, petitioner filed a "supplemental petition" which the

19   court construed as an amended petition.  The court ordered respondent to show cause why the

20   amended petition should not be granted.  Respondent has filed an answer addressing the merits

21   of the amended petition.  Petitioner filed a traverse.  Having reviewed the briefs and the

22   underlying record, the court concludes that petitioner is not entitled to relief based on the claims

23   presented and denies the petition.

24                                    **BACKGROUND**

25          On January 21, 2000, Melvin Cardoza and Cesar Pena were parked in Cardoza's car

26   listening to music in a parking lot of a bowling alley.  (Resp. Ex. 3, (People v. Gebrezgiabher,

27   California Court of Appeal, Sixth Appellate District, Case No. H024195, April 8, 2004) at 2.)

28
     Order Denying Petition for Writ of Habeas Corpus
     P:\PRO-SE\SJ.Rmw\HC.06\Gebrezgiabher864denyhc.wpd

As Donald Anderson was walking away from the car, petitioner and another man asked him who was in the car.  (Id.)  Anderson told them there were "two scraps[1] and a bunch of girls."  (Id.)

Cardoza testified that he was talking to Pena in the car when two men approached his window.  (Id.)  One of the men opened the car door, dragged Cardoza out, and started to beat and kick him.  (Id.)  Cardoza fought back and was able to get the smaller of the two men on the ground while the taller man attacked Cardoza from behind.  (Id.)  Cardoza was stabbed in the back, arm, and chest.  (Id. at 2-3.)  Cardoza managed to turn around and knock a knife out of the taller man's hand and brandish it at him.  (Id. at 3.)  After someone yelled that the police were coming, Cardoza dropped the knife and started beating up the smaller man again.  (Id.)  The taller man warned again that the police were coming and ran off.  (Id.)  Before the police showed up, Cardoza stopped attacking the smaller man, at which point the smaller man fled.  (Id.)

Two women, Samantha and Kimberlee, testified that two men approached Cardoza's window yelling gang slogans.  (Id.)  Both said that after one man punched Cardoza, Cardoza got out and started fighting with them.  (Id.)  When the fighting moved to the rear of Cardoza's car, the women said that Pena got out and joined the fight.  (Id.)  Both women said that Pena punched one of the men in the back, and when he did, that man turned around and stabbed Pena.  (Id. at 3-4.)

Jason Herrmann testified that he watched Cardoza get out of the car and start fighting.  (Id. at 4.)  After Pena got out of the car and punched one of the men in the back, the man was holding a knife and, as Pena began backing up, asked Pena, "Do you want some of this?"  (Id.)  The man turned back toward Cardoza and continued beating him.  (Id.)  When Pena tried to get him off Cardoza, the man turned and attacked Pena.  (Id.)  Both men continued fighting on the ground and Pena was bleeding heavily.  (Id.)  Herrmann said he never saw Cardoza or Pena with a weapon.  (Id.)

Cardoza testified that he did not hear or see Pena during the entire incident.  (Id. at 3.)

---

[1]  "Scraps" is a derogatory term used to refer to Sureño gang members.

1   When it was over, Cardoza noticed that Pena was bleeding and not able to walk or breathe.  (Id.)

2   Cardoza had multiple stab wounds and lacerations while Pena had a single stab wound to his

3   chest and no pulse.  (Id.)

4       The parties stipulated that petitioner stabbed Pena.  (Id. at 4.)  After fleeing the scene,

5   petitioner spoke to his friend, Katherine, and said, "we got 'em."  (Id.)  He told her not to

6   mention being with him just before he went to the bowling alley, and to act as if she had not seen

7   him.  (Id.)

8       An examination of Cardoza's knife found near the car showed bloodstains on the handle

9   belonging to Pena.  (Id. at 4-5.)  An examination of photographs of petitioner's wounds showed

10  two superficial cuts on petitioner's back and one to the front of petitioner's neck, presumably

11  caused by a single poke and swipe of a sharp instrument.  (Id.)

12      Prior to trial, petitioner pleaded guilty to unrelated charges:  two counts of second degree

13  robbery, one count of attempted second degree robbery, and assault.  (Id. at 1 n.1.)  A jury

14  convicted petitioner of second degree murder of Cesar Pena and assault with a deadly weapon

15  against Melvin Cardoza.  (Id. at 1.)  The jury further found that the assault inflicted great bodily

16  injury and that both crimes were committed for the benefit of a criminal street gang.  (Id.)

17  Petitioner was sentenced to 15 years to life plus a consecutive 11 years 8 months.  (Id.)  On

18  direct appeal, the state appellate court affirmed petitioner's conviction and sentence on April 8,

19  2004.  (Id.)  The state supreme court denied a petition for review on June 16, 2004. (Resp. Exs.

20  4, 5.)  After exhausting state post-conviction remedies, the instant petition was filed on

21  December 22, 2006.

22                                    **DISCUSSION**

23  **A.  Standard of Review**

24      This court may entertain a petition for writ of habeas corpus "in behalf of a person in

25  custody pursuant to the judgment of a state court only on the ground that he is in custody in

26  violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

27  Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court

28

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.06\Gebrezgiabher864denyhc.wpd

1    may not grant a petition challenging a state conviction or sentence on the basis of a claim that

2    was reviewed on the merits in state court unless the state court's adjudication of the claim

3    "(1) resulted in a decision that was contrary to, or involved an unreasonable application of,

4    clearly established federal law, as determined by the Supreme Court of the United States; or (2)

5    resulted in a decision that was based on an unreasonable determination of the facts in light of the

6    evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  The first prong applies

7    both to questions of law and to mixed questions of law and fact, <u>Williams v. Taylor</u>, 529 U.S.

8    362, 384-86 (2000), while the second prong applies to decisions based on factual determinations,

9    <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

10        "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

11   court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

12   law or if the state court decides a case differently than [the] Court has on a set of materially

13   indistinguishable facts."  <u>Williams</u>, 529 U.S. at 412-13.  A state court decision is an

14   "unreasonable application of" Supreme Court authority, falling under the second clause of

15   § 2254(d)(1), if the state court correctly identifies the governing legal principle from the

16   Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's

17   case."  <u>Id.</u> at 413.  The federal court on habeas review may not issue the writ "simply because

18   that court concludes in its independent judgment that the relevant state-court decision applied

19   clearly established federal law erroneously or incorrectly."  <u>Id.</u> at 411.

20        Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination

21   will not be overturned on factual grounds unless objectively unreasonable in light of the

22   evidence presented in the state-court proceeding."  <u>Miller-El</u>, 537 U.S. at 340.  The court must

23   presume correct any determination of a factual issue made by a state court unless the petitioner

24   rebuts the presumption of correctness by clear and convincing evidence.  <u>See</u> 28 U.S.C. §

25   2254(e)(1).

26        In determining whether the state court's decision is contrary to, or involved an

27   unreasonable application of, clearly established federal law, a federal court looks to the decision

28

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.06\Gebrezgiabher864denyhc.wpd

of the highest state court to address the merits of a petitioner's claim in a reasoned decision. LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  The standard of review under the AEDPA is somewhat different where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim.  When confronted with such a decision, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law.  Richter v. Hickman, 521 F.3d 1222, 1229 (9th Cir. 2008).

**B.     Petitioner's Claims**

　　　　1.     Judicial Misconduct

Petitioner claims that the trial court committed misconduct by giving the jury the impression that it was aligning itself with the prosecution and against the defense.  (Am. Pet. Memo. Sec. VI.)  Petitioner proffers four separate examples in support of his claim to demonstrate the trial court's disparate treatment between the prosecution and defense counsel. (Id.)

A claim of judicial misconduct by a state judge in the context of federal habeas review does not simply require that the federal court determine whether the state judge committed judicial misconduct; rather, the question is whether the state judge's behavior "rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." Duckett v. Godinez, 67 F.3d 734, 740 (9th Cir. 1995) (citations omitted).  A state judge's conduct must be significantly adverse to a defendant before it violates constitutional requirements of due process and warrants federal intervention.  See Garcia v. Warden, Dannemora Correctional Facility, 795 F.2d 5, 8 (2d Cir. 1986).  It is not enough that a federal court not approve of a state judge's conduct.  Objectionable as the conduct at issue might be, when considered in the context of the trial as a whole it may not be of sufficient gravity to warrant the conclusion that fundamental fairness was denied.  See Duckett, 67 F.3d at 741 (citations omitted).

1    The California Court of Appeal rejected this claim because counsel failed to preserve it

2   by not objecting to any of the statements at trial.  (Resp. Ex. 3, p. 11.)  Because petitioner

3   concedes that this claim is procedurally barred[2] and California's contemporaneous objection rule

4   is an independent and adequate state bar, the court concludes this claim is procedurally

5   defaulted.  See Paulino v. Castro, 371 F.3d 1083, 1093 (9th Cir. 2004).

6        The California Court of Appeal continued to analyze the issue, however, and determined

7   that even if the claim had been properly preserved, the trial court did not commit judicial

8   misconduct.  (Resp. Ex. 3, p. 11.)  The Court of Appeal concluded all of petitioner's examples

9   were exaggerated and analyzed only one in detail.  (Id.)  The Court of Appeal determined that

10  although some of the trial court's comments were unfortunate, when viewed in context, they

11  were all within the range of proper judicial conduct and within the court's authority to control

12  trial proceedings.  (Id. at 11-13.)

13       Petitioner's first example of bias is the trial court's statement to the jury during direct

14  examination of Cardoza as the prosecutor was handing the jurors photographs of Cardoza's car

15  and its location in the parking lot on the night of the crimes.  (Am. Pet. Memo. Sec. VI.)  "And

16  folks, [the prosecutor] is going to pass those around.  Take a good hard look at them because

17  apparently we are going to have some critical testimony.  It's a good idea that you have a picture

18  in your mind of what we are hearing about."  (Resp. Ex. 2, Vol. 5, RT 576.)  After that, the

19  prosecutor began questioning Cardoza on the details of what transpired that night.

20       Although petitioner believes that the court's use of the word "critical" usurped the jury's

21  fact-finding duty to determine what evidence was critical or not, a trial judge is permitted to

22  participate in the examination of witnesses to clarify issues and, as here, call the jury's attention

23  to important evidence.  United States v. Wilson, 16 F.3d 1027, 1031 (9th Cir. 1994).  Cardoza

24  was the second victim in this case and the main witness.  That the trial court presumed the

25  testimony was going to be critical was not an objectionable statement.  This comment did not

26  _____

27       [2] In his memorandum, petitioner concedes, "[Appellate] counsel argued that judicial
    misconduct had occurred, an issue that was procedurally barred."  (Am. Pet. Memo. Sec. IV.)

28  Order Denying Petition for Writ of Habeas Corpus
    P:\PRO-SE\SJ.Rmw\HC.06\Gebrezgiabher864denyhc.wpd

1  overstep the bounds of propriety and did not render the trial fundamentally unfair.  See Duckett,

2  67 F.3d at 740.

3      Petitioner's second example of bias occurred when the trial court "criticized" defense

4  counsel during his cross-examination of Samantha Pribyl.  (Am. Pet. Memo. Sec. VI.)  Pribyl

5  was another witness who observed the fight.  During cross examination, defense counsel asked

6  Pribyl questions regarding what her vantage point was in relation to Cardoza's car, the fight,

7  petitioner, and the victims.  While defense counsel was directing Pribyl to illustrate her

8  testimony by making marks on a picture, the trial court stated, "Counsel, we are putting a lot of

9  pressure on Ms. Pribyl here to be an artist.  Is there a point you are getting to here?"  (Resp. Ex.

10  2, Vol. 7, RT 1149.)  After counsel answered that Pribyl's position was important to show what

11  she could see, the court replied, "Counsel, we have had two and a half hours about where she

12  was.  You have got a car there.  Why don't you just have her mark an "X" where she was when

13  the fight started."  (Id. at 1150.)

14      Although petitioner asserts the trial court's comments demonstrated criticism toward

15  defense counsel, it is generally appropriate for a trial judge to participate in the examination of

16  witnesses for the purpose of clarifying the evidence, confining counsel to evidentiary rulings,

17  controlling the orderly presentation of the evidence, and preventing undue repetition of

18  testimony.  United States v. Morgan, 376 F.3d 1002, 1008 (9th Cir. 2004).  In fact, the record

19  shows that the trial court attempted to prevent undue repetition of testimony just minutes before

20  outside the presence of the jury and admonished defense counsel that he was losing the jury's

21  attention because his questions were not eliciting any new information regarding vantage point.[3]

22

23      [3]  "Court: [Defense counsel], I am not going to interrupt cross-examination, but you are
losing the jury."  (Resp. Ex. 2, Vol. 7, RT 1130.)

24
25      "Court: I am talking basically about the first 25 or 30 minutes of cross-examination.  I
am not going to presume to tell you what your issues are. . . . Or where her credibility lies and
26  whatnot, but so far you have asked a million questions that's confirmed exactly what she said
already on cross or on direct.  And you know, I am just watching the jury.  They are rolling their
27  eyes.  You are kind of losing them as far as having to basically confirm stuff.  So I just need you
to focus that there is issues that you want to get to, and certainly . . . I just wanted to make my

28

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.06\Gebrezgiabher864denyhc.wpd

1   Further, given the fact that the judge may question the witness directly, there is nothing wrong

2   with a judge, under appropriate circumstances, suggesting a line of questioning to an attorney.

3   United States v. Lopez-Martinez, 543 F.3d 509, 513-15 (9th Cir. 2008).

4       Petitioner's third example of judicial bias occurred during cross-examination of the

5   prosecution's gang expert.  Petitioner asserts that the trial court's comments amounted to

6   vouching for the prosecution's expert.  After reading the trial court's comments in context, this

7   court concludes that the trial court was not vouching for the expert, but rather focusing defense

8   counsel on asking proper questions[4] and preventing the expert from volunteering extraneous

9   information to questions that were not asked.[5]  See Morgan, 376 F.3d at 1008.

10      Petitioner's final example of judicial bias occurred as the trial court explained that

11  defense counsel was going to introduce several taped recordings of Cardoza's statements given

12

13

14  perception as that the jury is -- we have gone into a lot of the area that are really not in issue like
    where the car was.  We all know where the car was.  Ten witnesses have testified where the car
15  was.  We have got photographs.  You spent a lot of time doing it.  And I am not criticizing and I
    am not going to curtail cross-examination.  It's just the perception that I think you might want to
16  take into account."  (Resp. Ex. 2, Vol. 7, RT 1130-31.)

17     [4] "Counsel: Would it change your opinion at all if you knew that [petitioner] was possibly
    cut from behind on the neck by Mr. Pena?
18        Court: Counsel, you have got to be clear.  Does this change his opinion regarding
    what?"  (Resp. Ex. 2, Vol. 10, RT 1680.)
19

20      "Counsel: So no one told you the extent of [petitioner's] injuries, is that correct?
        Witness: I did not take into account, nor does it change my opinion, his injuries.
21      Counsel: No one even told you that -- did anyone tell you that Mr. Cardoza indicated
        that he --
22      Court: Counsel, I am going to stop you here.  It doesn't make any difference whether
    anybody told this officer anything.  The whole import of the officer's testimony regarding
23  anything is based on an assumed hypothetical question [the prosecutor] gave him.  If you have
    got different assumptions such as injuries, throw them into the hypothetical.  Ask the officer if it
24  changes his opinion regarding that opinion.  But it doesn't make any difference."  (Resp. Ex. 2,
    Vol. 10, RT 1682-83.)
25

26     [5] "Court: Excuse me, Detective.  Do me a favor.  If the answer calls for a yes or a short
    answer, give a yes or no or short answer.  Don't volunteer information that's not asked because
27  we will be here all day."  (Resp. Ex. 2, Vol. 10, RT 1681.)

28

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.06\Gebrezgiabher864denyhc.wpd

1    during police interviews.  Petitioner argues the trial court's statement, "There are elements of

2    Mr. Cardoza's testimony *that [defense counsel] believes that are inconsistent* with a statement

3    Sergeant Burgess took from him," belittled defense counsel and defense evidence and protected

4    the prosecution. (Resp. Ex. 2, Vol. 10, RT 1697.) (Emphasis added.)  Such language does not

5    disclose "actual bias," nor does it project an appearance of advocacy or partiality.  See United

6    States v. Parker, 241 F.3d 1114, 1119 (9th Cir. 2001).

7        In addition, the trial court instructed the jury, "I have not intended by anything I have

8    said or done or by any question that I may have asked or by any ruling I may have made to

9    intimate or suggest to you what you should find the facts to be, or that I believe or disbelieve any

10   particular witness.  If anything I have done or said has seemed to so indicate, you will disregard

11   it and form your own conclusions."  (Resp. Ex. 2, Vol. 13, RT 2019.)  Moreover, even if any of

12   the comments mentioned by petitioner were inappropriate, in light of the "brevity of each

13   comment and the length of [petitioner's] trial, which lasted 20 days, from November 26 to

14   December 21, 2001, excluding jury selection, and involved testimony from over 20 witnesses,

15   which comprised over 2,000 pages of transcript," they did not render the trial fundamentally

16   unfair.  (Resp. Ex. 3, p. 13.)  Duckett, 67 F.3d at 740.

17       Accordingly, the state court's rejection of petitioner's claim of judicial misconduct was

18   not contrary to, or an unreasonable application of, Supreme Court authority, nor was it based

19   upon an unreasonable application of the facts in light of the evidence presented.  28 U.S.C.

20   § 2254 (d)(1), (2).

21           2.    Admission of autopsy photographs

22       Petitioner claims that Pena's autopsy photographs were inadmissible because they were

23   not probative of any fact in dispute and were prejudicial.  (Am. Pet. Memo. Sec. VII.)

24   Specifically, petitioner states that the pictures were especially gruesome because they showed

25   Pena's open chest and tubes, both before and after Pena's body was cleaned.  (Id.)  Further,

26   petitioner complains that the trial court erred in disallowing pictures of petitioner's scar-tissue

27   from wounds incurred that same night, and therefore, the trial court's admission of Pena's

28

1    wounds amounted to asymmetrical application of evidentiary standards.  (Id.)

2          The due process inquiry in federal habeas review is whether the admission of evidence

3    was arbitrary or so prejudicial that it rendered the trial fundamentally unfair.  See Walters v.

4    Maass, 45 F.3d 1355, 1357 (9th Cir. 1995).  But only if there are no permissible inferences that

5    the jury may draw from the evidence can its admission violate due process.  See Jammal v. Van

6    de Kamp, 926 F.2d 918, 920 (9th Cir. 1991).

7          The state appellate court rejected petitioner's claim.

8          At trial, Doctor Gregory Whitley testified that he treated Cardoza and Pena
           after they were brought to the emergency room at the hospital.  He testified
9          that Pena had a single stab wound to the chest.  He then summarized the
           treatment the provided, which included intubation and a thoracotomy, i.e.,
10         surgical opening of the chest.  Doctor Whitley referred to the photographs in
           explaining the initial wound and surgical treatment.  Doctor Vemeghi also
11         referred to the photographs during his testimony concerning the anatomy of a
           chest, a thoracotomy, the location and nature of the stab would, and the lack
12         of any other wounds.

13         Since the photographs helped illustrate the medical testimony concerning the
           dimensions and severity of the stab wound and the type of weapon used, we
14         find no abuse of discretion.

15         Moreover, even if we found that the probative illustrative value of the
           photographs was outweighed by their gruesome nature, we would not
16         conclude that their admission compels reversal.  The medical experts vividly
           described in detail Pena's wounds and the surgical actions that left a gaping
17         wound in his chest.  In our view, jurors were adequately prepared to see the
           photographs and knew that the gaping wound was the result of surgical
18         procedures and not the result of [petitioner's] direct action.  We also note that
           the court admitted withou objection two other photographs of Pena's chest,
19         showing the stab wound, ribs, and the thoracotomy.  Finally, any potential
           prejudice from the gruesome nature of the photographs was overshadowed by
20         undisputed evidence that defendant initiated an attack on Cardoza without
           provocation, he beat and stabbed Cardoza, he then stabbed Pena, and he later
21         boasted about his conduct.

22   (Resp. Ex. 3, p. 15-16.)

23         Here, as the state appellate court noted, the photographs were relevant to illustrate

24   testimony of the doctors and were used to demonstrate the size and severity of the wound as well

25   as the type of weapon likely involved.  As such, its admission did not violate due process.  See

26   id.

27         Further, even if the admission of the photographs were irrelevant or prejudicial, the Ninth

28

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.06\Gebrezgiabher864denyhc.wpd

Circuit recently stressed that the Supreme Court has "not yet made a clear ruling that the admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient" to grant habeas relief.  Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009). Because there is no "clearly established" federal law regarding this issue, the state court's ruling cannot have been an "unreasonable application."  Id. (Internal quotation and citation omitted.)

Accordingly, the state court's rejection of petitioner's claim of improper admission of photographs was not contrary to, or an unreasonable application of, Supreme Court authority, nor was it based upon an unreasonable application of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d)(1), (2).

3.    Voluntary manslaughter jury instruction

Petitioner claims that the instruction on voluntary manslaughter improperly instructed the jury that in order to find him guilty of voluntary manslaughter, they must also find that he possessed an intent to kill.  (Am. Pet. Memo. Sec. V.)  The instruction at issue was CALJIC 8.40 and, at the time of petitioner's trial, correctly stated the law as follows:

> Every person who unlawfully kills another human being without malice aforethought but with an intent to kill, is guilty of voluntary manslaughter in violation of Penal Code Section 192(a).  There is no malice aforethought if the killing occurred upon a sudden quarrel or a heat of passion or in the actual but unreasonable belief in the necessity to defend oneself against imminent peril to life or great bodily injury.  In order to prove this crime, each of the following elements must be proved: One, a human being was killed; two, the killing was unlawful; and three, the killing was done with the intent to kill.
>
> (Resp. Ex. 2, Vol. 12, RT 1880.)

Petitioner relies on People v. Lasko, 23 Cal. 4th 101 (2000), and asserts that because the instruction erroneously directed the jury that it could not find voluntary manslaughter unless it also found an intent to kill, the instruction violated his right to due process.[6]  (Am. Pet. Memo. Sec. V.)  In support of his claim, petitioner cites to the fact that the jury informed the court it

---

[6] To the extent petitioner argues that the omission of an involuntary manslaughter instruction violated his due process, the court rejects this claim.  See Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir. 1998) ("the failure . . . to instruct on lesser included offenses in a non-capital case does not present a federal constitutional question.")

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.06\Gebrezgiabher864denyhc.wpd

1    could not reach a unanimous decision on first degree murder or voluntary manslaughter after

2    thoroughly discussing both options.  (Id.) Eventually, the jury came back with a verdict of guilty

3    of second degree murder.  Petitioner posits that it can be reasonably inferred that the jury

4    determined there was no intent to kill and, therefore, the jury was forced to make an all-or-

5    nothing choice between second degree murder and acquittal.  (Id.)

6        To obtain federal collateral relief for errors in the jury charge, a petitioner must show that

7    the ailing instruction by itself so infected the entire trial that the resulting conviction violates due

8    process.  See Estelle v. McGuire, 502 U.S. 62, 72 (1991).  The instruction may not be judged in

9    artificial isolation, but must be considered in the context of the instructions as a whole and the

10   trial record.  See id.  In reviewing a faulty instruction, the court inquires whether there is a

11   "reasonable likelihood" that the jury has applied the challenged instruction in a way that violates

12   the Constitution.  Id. at 72, n.4.  If an error is found, the court must also determine that the error

13   had a "substantial and injurious effect or influence in determining the jury's verdict" before

14   granting relief in habeas proceedings.  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).  A jury

15   instruction that omits or misdescribes an element of an offense is constitutional error subject to

16   "harmless error" analysis.  See Evanchyk v. Stewart, 340 F.3d 933, 940 (9th Cir. 2003).

17       The state appellate court denied this claim.  The court agreed with both parties that the

18   challenged instruction was erroneous, however, it did not reverse the conviction because it

19   concluded that the error was not prejudicial.  (Resp. Ex. 3, p. 5-10.)

20           The record reveals that [petitioner] harbored violent animosity toward
             Sureños.  The day before the killing, [petitioner] and others attacked and beat
21           suspected Sureños.  The next day, after learning that Cardoza and Pena were
             Sureños, [petitioner] assaulted Cardoza.  When Cardoza fought back and got
22           the upper hand on [petitioner's] confederate, [petitioner] attacked and
             ultimately stabbed him.  The emergency room doctor who treated Cardoza
23           testified that one of the stabs hit Cardoza's sternum, and but for the sternum, it
             might have pierced his heart.  When Pena came to Cardoza's aid, [petitioner]
24           turned around, brandished a knife, and according to one witness, rhetorically
             asked Pena if he wanted 'some of this.'  This evidence plus the undisputed
25           fact that [petitioner] plunged his knife into Pena's chest with such force that it
             pierced his heart constitutes strong circumstantial evidence that [petitioner]
26           acted not only with an intent to kill Pena but also with both express and
             implied malice.  Moreover, [petitioner's] later boast to a friend that 'we got
27           'em[,]' further suggests that the killing was intentional.

28

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.06\Gebrezgiabher864denyhc.wpd

1   . . .

2   The jury's request to hear the closing arguments again indicates only that
    jurors could not agree whether defendant acted with premeditation and

3   deliberation, issues on which the evidence was not that strong.  The
    foreperson's statement that the jury had address voluntary manslaughter could

4   simply have meant that jurors rejected defense counsel's claim that even
    though defendant initially attacked Cardoza and then beat and stabbed him, he

5   nevertheless acted in the heat of passion or self-defense when Pena came to
    Cardoza's aid.

6
    We further note that neither party suggested that an unintentional killing in the
7   heat of passion was murder.  On the contrary, the court instructed the jury that
    "[the] distinction between murder and manslaughter is that *murder requires*

8   *malice* while manslaughter does not," and that where the killing occurs "in the
    heat of passion or is excited by a sudden quarrel that amounts to adequate

9   provocation or in the actual but unreasonable belief in the necessity to defend
    against imminent peril to life or great bodily injury, the offense is

10  manslaughter.  In that case *even if an intent to kill exists*, the law is that
    malice, which is an essential element of murder, is absent."  The court also

11  instructed the jury that to establish that the killing was murder, the
    prosecution had the burden to prove not only that defendant acted with malice

12  but also that he did not act in the heat of passion upon a sudden quarrel or in
    the belief that killing Pena was necessary to prevent death or great bodily

13  injury.  Given these instructions, the jury could not have convicted defendant
    of murder unless it found beyond a reasonable doubt that he acted with malice

14  and not in heat of passion or in self-defense.

15  (Resp. Ex. 3, p. 8-9.)

16      Here, although the trial court erroneously stated that intent to kill is a required element of

17  voluntary manslaughter, that instruction by itself did not "so infect[ ] the entire trial that the

18  resulting conviction violates due process." Estelle, 502 U .S. at 72.  As the record demonstrates,

19  the jury also received CALJIC 8.50, which explains that murder requires malice while

20  manslaughter does not. (Resp. Ex. 2, Vol. 2, RT 1881.)  The jury was also instructed that

21  regardless of whether the killing was intentional, petitioner could not be convicted of murder

22  unless the prosecution proved that, at the time of the killing, petitioner was not acting in the heat

23  of passion or self defense.  (Id.)

24      In any event, the state appellate court's determination that the instructional error was

25  harmless was not contrary to, or an unreasonable application of, Estelle.  As noted by the state

26  appellate court, the evidence in this case supported a finding of an intentional killing.  Further,

27  because second degree murder requires "malice aforethought" and voluntary manslaughter does

28

1   not, the jury's finding of second degree murder means the jury necessarily found the element of

2   malice satisfied.  This finding precludes finding the petitioner guilty of voluntary manslaughter,

3   even if the jury had been properly instructed, because voluntary manslaughter does not involved

4   malice.

5          Accordingly, the court concludes that the state court's decision rejecting this claim was

6   not contrary to, or an unreasonable application of clearly established federal law, nor was it an

7   unreasonable determination of the facts in light of the evidence presented.  28 U.S.C.

8   § 2254(d)(1), (2).

9          4.      Sentencing error pursuant to Apprendi and its progeny

10          Petitioner claims that his Fifth, Sixth, and Fourteenth Amendment rights were violated

11   because he was punished based on facts that were neither submitted to a jury nor proven beyond

12   a reasonable doubt.  (Am. Pet. Memo. Sec. I.)  Specifically, petitioner argues that his sentence

13   was improperly increased by an obstruction of justice enhancement as well as his probationary

14   status at the time of the offense and his unsatisfactory parole performance.  (Id.)

15          "Other than the fact of a prior conviction, any fact that increases the penalty for a crime

16   beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a

17   reasonable doubt."  Apprendi v. New Jersey, 530 U.S. 466, 488-90 (2000).  The "statutory

18   maximum" for Apprendi purposes is the maximum sentence a judge could impose based solely

19   on the facts reflected in the jury verdict or admitted by the defendant; that is, the relevant

20   "statutory maximum" is not the sentence the judge could impose after finding additional facts,

21   but rather is the maximum he or she could impose without any additional findings.  Blakely v.

22   Washington, 542 U.S. 296, 303-04 (2004).

23          In Cunningham v. California, 549 U.S. 270, 281 (2007), the Supreme Court applied the

24   above reasoning to California s determinate sentencing law ("DSL"), and found such sentencing

25   scheme violated the Sixth Amendment because the DSL allowed the sentencing court to impose

26   an elevated sentence based on aggravating facts that the trial court found by a preponderance of

27   the evidence, rather than facts found by a jury beyond a reasonable doubt.  The Supreme Court

28

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.06\Gebrezgiabher864denyhc.wpd

1  found that the DSL resembled the sentencing scheme invalidated in <u>United States v. Booker</u>, 543

2  U.S. 220 (2005); therefore, its decisions from <u>Apprendi</u> to <u>Booker</u> pointed to the middle term

3  specified in California's statutes, not the upper term, as the relevant statutory maximum.

4  <u>Cunningham</u>, 549 U.S. at 288.

5      The superior court rejected petitioner's claim, stating that the record did not demonstrate

6  any increase in petitioner's sentence based on the alleged factors.  (<u>Id.</u>, Ex. A, p. 1-2.)  Further,

7  the superior court noted that petitioner was properly sentenced to the mid-term of his determinate

8  sentences.  (<u>Id.</u> at 2.)

9      Upon review of the sentencing transcript and probation report, the court agrees with the

10  superior court.  The trial court sentenced petitioner to an indeterminate sentence of 15 years to

11  life for second degree murder.  For the remaining counts, the trial court sentenced petitioner to

12  the mid-term of the determinate sentences, the relevant statutory maximum.  (Resp. Ex. 2, Vol.

13  14, RT 1207-08.)  <u>See</u> <u>Cunningham</u>, 549 U.S. at 288.  Although the trial court also sentenced

14  petitioner to terms for both the gang enhancement and great bodily injury enhancement,[7] the

15  record demonstrates that those were both found true by the jury as well as admitted to by

16  petitioner in his guilty plea.  <u>See</u> <u>Blakely</u>, 542 U.S. at 303-04.  Contrary to petitioner's claim, the

17  trial court did not increase petitioner's sentence beyond the relevant statutory maximum.[8]

18      Accordingly, the court concludes that the state court's decision rejecting this claim was

19  not contrary to, or an unreasonable application of clearly established federal law, nor was it an

20  unreasonable determination of the facts in light of the evidence presented.  28 U.S.C.

21  § 2254(d)(1), (2).

22  _____

23    [7]  The record does not reflect that petitioner was given any enhancement for obstruction of justice, as he claims.

24
25    [8]  To the extent petitioner claims his sentences should have run concurrently rather than consecutively, the Supreme Court has recently rejected that argument.  <u>See</u> <u>Oregon v. Ice</u>, 129 S.
26  Ct. 711, 717-18 (2009) (declining to extend <u>Apprendi</u> to a state's sentencing system that gives judges discretion to determine facts allowing imposition of consecutive or concurrent sentences
27  for multiple offenses, noting that determination of consecutive versus concurrent sentences is traditionally not within the function of the jury).

28

5.      Ineffective assistance of trial counsel -- failing to investigate and properly advise petitioner regarding guilty plea

Petitioner claims that counsel was dishonest regarding the consequences of pleading guilty to Counts 4-7.  (Am. Pet. Memo. Sec. II.)  Petitioner further asserts that had counsel been truthful regarding the consequences of entering a guilty plea as to Counts 4-7, petitioner would not have entered a guilty plea as to those counts, or would have also pleaded guilty on the remaining counts.  (Id.)  Specifically, petitioner claims that (1) counsel promised that if petitioner pled guilty, evidence from those crimes would not be introduced at his trial; (2) counsel promised the sentences from petitioner's guilty plea convictions would be concurrent with any other sentence should petitioner be convicted at trial; and (3) defense counsel failed to convey petitioner's wish to plead guilty to the prosecution.  (Id.)

The two-part test of Strickland applies to counsel's ineffective assistance in advising a defendant to accept or reject a plea offer.  See Hill v. Lockhart, 474 U.S. 52, 57-58 (1985).  He must show "that (1) his counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for [his] counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Womack v. Del Papa, 497 F.3d 998, 1002 (9th Cir. 2007) (internal quotations and citation omitted).

Erroneous advice regarding the consequences of a guilty plea is insufficient to establish ineffective assistance; petitioner must establish a "'gross mischaracterization of the likely outcome' of a plea bargain 'combined with . . . erroneous advice on the probable effects of going to trial.'"  Sophanthavong v. Palmateer, 378 F.3d 859, 868 (9th Cir. 2004) (citing United States v. Keller, 902 F.2d 1391, 1394 (9th Cir. 1990).

In ruling on petitioner's state habeas petition, the superior court rejected this claim, stating that petitioner's self-serving statements were insufficient to demonstrate prejudice and that his assertion that trial counsel failed to convey a willingness to plead guilty was too speculative.  (Am. Pet. Memo., Ex. A.)

Regarding petitioner's assertion that counsel assured him the guilty plea convictions

1  would not be introduced at trial, the transcript of the plea colloquy shows that the court and

2  parties explicitly discussed in the presence of petitioner the possibility of the convictions being

3  introduced at trial (Resp. Ex. 2, Vol. 1, RT 17-20), and counsel assured the court that petitioner

4  understood those convictions could be introduced at trial[9] (id. at 21).  Petitioner made no

5  objection, nor is there any other indication that he disagreed with counsel's statements.

6       Further, immediately after the court accepted petitioner's guilty pleas, defense counsel

7  argued his motion in limine in which counsel attempted to exclude any witness testimony

8  regarding the factual basis of the guilty plea convictions.  In open court, counsel stipulated that

9  the convictions could be introduced at trial and repeatedly stated that he was only attempting to

10 exclude witness testimony concerning those convictions.  (Id. at 38-40.)  Again, petitioner

11 remained silent and there is no indication in the record that he disagreed with or objected to

12 counsel's statements.

13      In addition, even assuming petitioner believed that by pleading guilty, evidence of those

14 counts would not be introduced at trial, petitioner cannot demonstrate that but for that belief, he

15 would have opted to go to trial on those counts.  See Womack, 497 F.3d at 1002.  Had petitioner

16 chosen to go to trial on Counts 4-7, the jury necessarily would have heard witness testimony

17 concerning Counts 4-7.  Instead, by pleading guilty, there was at least a possibility due to

18 counsel's motion in limine that the court would exclude witness testimony as irrelevant because

19 those convictions would not be a matter in dispute.  Accordingly, petitioner fails to show a

20 "reasonable probability" that but for counsel's error, he would have insisted on going to trial.

21      Regarding petitioner's assertion that counsel promised that his sentences would run

22 _____

23    [9] "[Defense Counsel]: I'm sorry for interrupting.  In view of what [the prosecutor] said, let me just say I told the Court and that *I have had some substantial discussions with Mr.*

24 *Gebrezgiabher about this and he understands [pleading guilty] doesn't preclude it from coming in for trial.*  There will be consequences so far as Officer Ahern's opinion, and put it is [sic] in a

25 slightly different posture the fact that he plead guilty to it, but at the same time I anticipate that it would come in in case he didn't plead guilty to it.  But this is how we decided to do it as the

26 result of a lot of thought and Mr. Gebrezgiabher understands and he has agreed to do it.  *This is not something that's been done blindly without consideration of the consequences, evidentiary or*

27 *otherwise.*"  Id.  (Emphasis added.)

28

1   concurrently rather than consecutively, the transcript of the plea colloquy shows that the court

2   ascertained that petitioner received "absolutely no promises with regard to possible sentences"

3   (id. at 24) and that outside of the court's discussion with petitioner in open court, there were no

4   "other promises made to [petitioner] to get [him] to plead guilty" (id. at 29-30). Accordingly,

5   even assuming that counsel predicted a concurrent sentence, petitioner fails to demonstrate that

6   he was prejudiced. See Womack v. Del Papa, 497 F.3d 998, 1003-04 (9th Cir. 2007)

7   (concluding that even if counsel failed to inform petitioner of potential consequences to the plea,

8   because the record demonstrated that the court clearly advised petitioner, there was no

9   prejudice); cf. Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("solemn declarations in open court

10  carry a strong presumption of verity").

11          Finally, petitioner's assertion that counsel failed to convey his request to plead guilty to

12  the prosecution is couched only as speculation. Petitioner proffers no factual support

13  corroborating that belief outside of his self-serving and conclusory statements. See Jones v.

14  Gomez, 66 F.3d 199, 204 (9th Cir. 1995) ("conclusory allegations which are not supported by a

15  statement of specific facts do not warrant habeas relief") (internal quotation and citation

16  omitted).

17          In sum, petitioner has not demonstrated that counsel "grossly mischaracterized" the likely

18  outcome of the plea or of trial, nor has he provided evidence that counsel gave "erroneous advice

19  on the probable effects of going to trial." Sophanthavong, 378 F.3d at 868. Therefore,

20  petitioner's claim that counsel provided ineffective assistance in investigating and advising

21  petitioner about his guilty plea is without merit.

22          Accordingly, the court concludes that the state court's decision rejecting this claim was

23  not contrary to, or an unreasonable application of clearly established federal law, nor was it an

24  unreasonable determination of the facts in light of the evidence presented. 28 U.S.C.

25  § 2254(d)(1), (2).

26          6.      Ineffective assistance of trial counsel -- failure to object to judicial misconduct

27          Petitioner claims he received ineffective assistance of counsel because trial counsel failed

28

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.06\Gebrezgiabher864denyhc.wpd

1  to object to prejudicial judicial misconduct, as detailed above in Section B.1, supra.  (Am. Pet.

2  Memo. Sec. III.)

3        A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth

4  Amendment right to counsel, which guarantees not only assistance, but effective assistance of

5  counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  The benchmark for judging any

6  claim of ineffectiveness must be whether counsel's conduct so undermined the proper

7  functioning of the adversarial process that the trial cannot be relied upon as having produced a

8  just result.  Id.

9        In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner

10  must establish two things.  First, he must establish that counsel's performance was deficient, i.e.,

11  that it fell below an "objective standard of reasonableness" under prevailing professional norms.

12  Id. at 687-88.  Second, he must establish that he was prejudiced by counsel's deficient

13  performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional

14  errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable

15  probability is a probability sufficient to undermine confidence in the outcome.  Id.

16        The superior court rejected this claim, stating that because the state court of appeals

17  analyzed the claim of judicial misconduct and concluded, "We find that individually and

18  collectively they do not reflect the sort of blatant and persistent discourtesy, disparagement,

19  favoritism, or prejudice that might give rise to incurable prejudice," petitioner failed to

20  demonstrate prejudice.  (Am. Pet. Mem., Ex. A, p. 3.)

21        Here, because the court conclude above in Section B.1, supra, that there was no judicial

22  misconduct, petitioner cannot demonstrate that any failure to object was deficient or prejudicial.

23  Put simply, trial counsel cannot have been ineffective for objecting to the court's proper

24  comments.  Because the trial court's comments were not improper, petitioner's claim that

25  counsel was ineffective for failing to object to the comments necessarily fails.  See Strickland,

26  466 U.S. at 694.

27        Accordingly, the court concludes that the state court's decision rejecting this claim was

28

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.06\Gebrezgiabher864denyhc.wpd

1   not contrary to, or an unreasonable application of clearly established federal law, nor was it an

2   unreasonable determination of the facts in light of the evidence presented.  28 U.S.C.

3   § 2254(d)(1), (2).

4           7.      Ineffective assistance of appellate counsel

5           Petitioner claims he received ineffective assistance of appellate counsel because appellate

6   counsel did not argue that the trial court erred when it read portions of the prosecutor's closing

7   argument regarding premeditation to the jury in response to a jury request during deliberations.

8   (Am. Pet. Memo. Sec. IV.)  Specifically, petitioner argues that even though the court also read

9   back defense counsel's closing argument, defense counsel did not spend much time discussing

10  premeditation and, therefore, the jury was presented with a biased view of premeditation.  (Id.)

11  Petitioner asserts that had the court not read back the prosecution's closing argument, he would

12  not have been convicted.  (Id.)

13          Claims of ineffective assistance of appellate counsel are reviewed according to the

14  standard set out in Strickland v. Washington, 466 U.S. 668 (1984).  See Miller v. Keeney, 882

15  F.2d 1428, 1433 (9th Cir. 1989).  A defendant therefore must show that counsel's representation

16  did not meet an objective standard of reasonableness and that there is a reasonable probability

17  that, but for counsel's unprofessional errors, he would have prevailed on appeal.  See id. at 1434

18  & n.9 (citing Strickland, 466 U.S. at 688, 694).

19          It is important to note that appellate counsel does not have a constitutional duty to raise

20  every nonfrivolous issue requested by defendant.  See Jones v. Barnes, 463 U.S. 745, 751-54

21  (1983).  The weeding out of weaker issues is widely recognized as one of the hallmarks of

22  effective appellate advocacy.  See Miller, 882 F.2d at 1434.  Appellate counsel therefore will

23  frequently remain above an objective standard of competence and have caused his client no

24  prejudice for the same reason - because he declined to raise a weak issue.  Id.

25          In ruling on petitioner's state habeas petition, the superior court denied this claim, noting

26  that petitioner conceded the court had the authority and discretion to order a read back of closing

27  arguments.  (Am. Pet. Memo., Ex. A, p.3.)  The court also noted that petitioner failed to support

28

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.06\Gebrezgiabher864denyhc.wpd

1    his claim that even though the trial court also read back the defense closing argument to the jury,

2    the jury received a biased view of premeditation and deliberation.  (<u>Id.</u> at 4.)

3         Here, during jury deliberations, the court received a note from the jury requesting a

4    readback of the prosecutor's closing argument concerning premeditation.  Initially, the court

5    denied the request, re-iterating the instruction that counsels' statements are not evidence.  (Resp.

6    Ex. 2, Vol. 13, RT 2058).  After the prosecution informed the court that, according to California

7    case law, a trial court has wide discretion in ordering a read back of closing arguments, the trial

8    court, over objection of defense counsel, granted the jury's request to have that specific portion

9    of the prosecution's argument read back.  (<u>Id.</u> at 2040-41.)  To be fair, however, the court also

10   ordered that defense counsel's closing argument concerning premeditation also be read back to

11   the jury.  (<u>Id.</u>)

12        In California, as petitioner concedes, a trial judge has "the inherent authority and

13   discretion to order that closing argument be read back."  <u>People v. Simms</u>, 5 Cal. 4th 405, 453

14   (1993).  Petitioner does not assert how or why the trial court abused its discretion in permitting a

15   read back of portions of the closing arguments and the record does not support such a finding.

16        Even assuming that the trial court abused its discretion in allowing a read back of the

17   arguments concerning premeditation, petitioner cannot show that he suffered harm.  The record

18   demonstrates that the trial court instructed the jury that statements by counsel are not evidence.

19   (Resp. Ex. 2, Vol. 13, RT 1865).  After the court granted the jury's request of a read back, the

20   court reminded the jury that statements were not evidence.  (<u>Id.</u> at 2043.)  In addition, the record

21   demonstrates that the jury requested a read back only of the portions concerning premeditation

22   (<u>id.</u> at 2035) and, at that time, the jury indicated that they could not reach a unanimous decision

23   on first degree murder (<u>id.</u> at 2041).  After ascertaining that a read back of those portions would

24   be helpful to the jury, the court allowed a read back of both the prosecutor's and defense

25   counsel's arguments concerning premeditation.  (<u>Id.</u> at 2041-42.)  Even after the jury listened to

26   the read back, it still could not reach a unanimous decision on first degree murder (<u>id.</u> at 2044),

27   and indeed, found petitioner guilty of the lesser included offense of second degree murder, which

28

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.06\Gebrezgiabher864denyhc.wpd

1   requires no premeditation. Despite petitioner's allegation that the read back gave the jury a

2   "biased" view of the element of premeditation, by convicting petitioner of second degree murder,

3   the jury necessarily concluded that the murder was not premeditated. Accordingly, even

4   assuming the read back was an abuse of discretion, petitioner does not demonstrate any

5   prejudice.

6          Petitioner makes a bald claim that had the court not allowed the read back of the

7   prosecution's closing argument concerning premeditation, petitioner would not have been

8   convicted at all and the read back was a plea by the court to have the jury convicted petitioner of

9   some degree of murder. Petitioner has submitted no evidence that the jury disregarded its

10  instructions and convicted petitioner without finding all the necessary elements of the crime of

11  second degree murder. <u>See</u> <u>Weeks v. Angelone</u>, 528 U.S. 225, 234 (2000) ("A jury is presumed

12  to follow its instructions.") Accordingly, the court rejects such an assertion as unsupported and

13  conclusory. <u>See</u> <u>Jones v. Gomez</u>, 66 F.3d 199, 204 (9th Cir. 1995).

14         Because there is no merit to petitioner's assertion that the read back of the prosecution's

15  closing argument was prejudicial error, appellate counsel's failure to raise this issue on appeal

16  could not have resulted in prejudice to petitioner. <u>See</u> <u>Miller</u>, 882 F.2d at 1434.

17         Accordingly, the court concludes that the state court's decision rejecting this claim was

18  not contrary to, or an unreasonable application of clearly established federal law, nor was it an

19  unreasonable determination of the facts in light of the evidence presented. 28 U.S.C.

20  § 2254(d)(1), (2).

21         8.   <u>Cumulative error</u>

22         Petitioner claims, in general, that he was deprived of a fair trial, in light of the cumulative

23  effect of all the claims raised. (Am. Pet. Memo. Sec. VIII.) In some cases, although no single

24  trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors

25  may still prejudice a defendant so much that his conviction must be overturned. <u>See</u> <u>Alcala v.</u>

26  <u>Woodford</u>, 334 F.3d 862, 893-95 (9th Cir. 2003). Cumulative error is more likely to be found

27  prejudicial when the government's case is weak. <u>Parle v. Runnels</u>, 505 F.3d 922, 928 (9th Cir.

28

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.06\Gebrezgiabher864denyhc.wpd

1   2007).  "[W]here the combined effect of individually harmless errors renders a criminal defense

2   far less persuasive than it might [otherwise] have been, the resulting conviction violates due

3   process."  Id. at 927 (internal quotation omitted).

4          Here, the only trial error found was the giving of the incorrect voluntary manslaughter

5   instruction, which the court has already concluded, was not prejudicial.  The erroneous

6   instruction did not render petitioner's defense "far less persuasive," nor did it have a "substantial

7   and injurious effect or influence on the jury's verdict."  Id. at 928.

8          Further, the Supreme Court has long recognized that, "given the myriad safeguards

9   provided to assure a fair trial, and taking into account the reality of the human fallibility of the

10  participants, there can be no such thing as an error-free, perfect trial, and that the Constitution

11  does not guarantee such a trial."  United States v. Hasting, 461 U.S. 499, 508-509 (1983).  The

12  AEDPA mandates that habeas relief may only be granted if the state courts have acted contrary

13  to or have unreasonably applied federal law as determined by the United States Supreme Court.

14  Williams v. Taylor, 529 U.S. 362, 412 (2000).  In the absence of Supreme Court precedent

15  recognizing a claim of "cumulative error," therefore, habeas relief cannot be granted.

16         Accordingly, the court concludes that the state court's decision regarding the cumulative

17  effect of any error was not an objectively unreasonable application of clearly established federal

18  law.  Richter v. Hickman, 521 F.3d 1222, 1229 (9th Cir. 2008).

19                                          **CONCLUSION**

20         For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  The Clerk

21  shall enter judgment for respondent and close the file.

22         IT IS SO ORDERED.

23  Dated:  _8/24/09 _____

                                            RONALD M. WHYTE
24                                          United States District Judge

25

26

27

28
    Order Denying Petition for Writ of Habeas Corpus
    P:\PRO-SE\SJ.Rmw\HC.06\Gebrezgiabher864denyhc.wpd